UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:12-cr-00072-TWP-DML |
| | ) |
| BRUCE JONES, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON MOTION TO SUPPRESS

This matter is before the Court on Defendant Bruce Jones' (Dr. Jones) Motion to Suppress (Dkt. 100).  Specifically, Dr. Jones seeks to suppress all objects recovered during the execution of search warrants at 1721 Williams Way East, Anderson, Indiana ("Williams Way"), 5110 Knollwood Lane, Anderson, Indiana (the "Lodge"), and 120 Lazy R Way, Roundup, Montana ("Montana") and any testimony relating to the search and items recovered from each address. The Court has considered the briefs of both parties and pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions of law.  For the reasons set forth herein, the Motion to Suppress (Dkt. 100) is **DENIED**.

## I. BACKGROUND

On May 10, 2010, the Government applied for a warrant to search Dr. Jones' Williams Way property, including all outbuildings located on the property, for evidence of healthcare fraud.[1]  In her affidavit supporting the warrant application, the affiant, Special Agent Kathleen Guider ("Agent Guider"), of the Federal Bureau of Investigations ("FBI") put forth details of the investigation into Dr. Jones' alleged illegal activities.  Agent Guider is assigned as a task force

---

[1] Violations of 18 U.S.C. §§ 1035, 1341, 1347.

officer of the Southern District of Indiana's Federal Health Care Fraud task force and she has training and experience in health care fraud investigations.

To establish probable cause, Agent Guider attested that Dr. Jones is a licensed psychologist who provides treatment services through Family Counseling Center, a business which he owns and operates from his Williams Way address. In the course of their investigation, the Government determined that Dr. Jones was an out-of-network provider for Anthem/Wellpoint and Wabash American Benefits Group (the "Insurance Companies"). Agent Guider alleged that Dr. Jones submitted fraudulent fee sheets which included photocopies of patients' signatures to justify billing the Insurance Companies for services he did not provide. As part of its investigation, the Government interviewed patients of Dr. Jones to verify whether the services were actually rendered. From those interviews, the Government determined that Dr. Jones worked alone out of his home office at the Williams Way address and the Lodge;[2] Dr. Jones kept files and business documents in a desk and closet located in the home office; and Dr. Jones would use a computer during counseling sessions. Through the interviews, the Government also discovered that the patients only saw Dr. Jones for joint/family sessions even though he billed the Insurance Companies for individual counseling sessions. Agent Guider affirmed that from her training and experience, she knows that health care providers are required under Indiana law to maintain records of services for seven years and home business owners typically store excess business records in places other than the room used for the office, such as basements, garages or outbuildings. A magistrate judge found probable cause and granted the warrant authorizing the Government to search for medical and business records, and electronic evidence of the purported violations. The search of the Williams Way address resulted in the

---

[2] The Lodge has a different physical address although it is located on the same Williams Way property. A second search warrant was issued for the Lodge when it was discovered that the original warrant was not sufficient to search that part of the property.

Government's discovery of a handgun in Dr. Jones' upstairs bedroom closet, ammunition, and a receipt from Gunbroker.com. Upon discovery of the handgun, the FBI agents left the Williams Way address and applied for a second search warrant for the property, which included firearms and ammunition in addition to evidence relating to healthcare fraud. During the second search of the Williams Way property, including the Lodge, the Government seized additional firearms, ammunitions, computers, and medical and business records. During a search of the computers seized from the property, the Government became aware of an alleged inventory of firearms located at Dr. Jones' Montana property. The Government applied for and was granted a warrant to search the Montana property from which they recovered additional firearms and ammunition.

## II. **DISCUSSION**

Dr. Jones asserts that the evidence should be suppressed for three reasons. First, he argues that the Government did not have probable cause for the first Williams Way search warrant. Next, he argues that the Government omitted relevant information in its application for the search warrant creating the need for a *Franks* hearing. Finally, he argues that the search warrant was an impermissible general warrant.

The Court has already ruled that a *Franks* hearing is not warranted under the circumstances of this case because Dr. Jones failed to make a substantial preliminary showing that the omission of a statement, a reckless misrepresentation, or false statement could reasonably have affected the Magistrate's finding of probable cause for each of the search warrants. (Dkt. 110.) Having found there is no material dispute concerning the facts, the motion raises purely legal questions; therefore no evidentiary hearing is required. The Court will address the legal issues in turn.

**A.     Did the magistrate have a substantial basis for finding probable cause?**

The reviewing court's duty is "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed" when issuing a search warrant. *Ill. v. Gates*, 462 U.S. 213, 238-39 (1983). "A determination of probable cause should be paid great deference by reviewing courts." *United States v. Pipito*, 861 F.2d 1006, 1008 (7th Cir. 1987). The magistrate can find probable cause exists when common sense and the totality of the circumstances would lead a reasonable prudent person to believe that "contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010).

Dr. Jones argues the search warrant was simply, on its face, without sufficient probable cause. The Court is not persuaded. In this case, the magistrate had a substantial basis for concluding probable cause existed in order to issue the warrant for the Williams Way property. In her affidavit supporting the warrant application, Agent Guider put forth details of an extensive investigation into Dr. Jones' alleged illegal activities. Agent Guider offered evidence of interviews with Dr. Jones' clients who were able to confirm that Dr. Jones kept medical records in a desk and closet in his office at both the Lodge and Williams Way home office. The clients were also able to confirm that Dr. Jones worked on a computer during their therapy sessions. The affidavit also informed the magistrate that Dr. Jones was required by law, in Indiana, to maintain at least seven years of business records. Given the large volume, it was reasonable to anticipate records could be found in multiple locations throughout the residence. The magistrate only needed to conclude that based on the totality of the circumstances, evidence of Dr. Jones' crimes would likely be found at the Williams Way address, in order to issue the warrant. The Court finds there was probable cause to issue a search warrant for the Williams Way residence.

**B.     Was the search warrant an impermissible general warrant?**

Next, Dr. Jones asserts the initial search warrant was a general warrant, "overreaching and abusive of the concept of being secure from undue government intrusion in one's own domicile by granting authority to search and seize nearly anything in his office and residence". In particular, Dr. Jones argues the warrant allowed for the search and seizure of every piece of property located in the office, regardless of it being related to allegations of health care fraud.

The Fourth Amendment requires that a warrant particularly describe both the place to be searched and the persons or things to be seized. However, a search warrant "need not be elaborately detailed." Although the Supreme Court refuses to expound on the definition of "particularly", the Seventh Circuit has continually held that the description does not have to be "elaborately detailed." *See e.g. Russell v. Harms,* 397 F.3d 458, 464 (7th Cir. 2005); *United States v. Hall*, 142 F.3d 988, 996 (7th Cir. 1998); *United States v. Jones*, 54 F.3d 1285, 1290 (7th Cir. 1995); *United States v. Somers*, 950 F. 2d 1279, 1285 (7th Cir. 1991). "The basic requirement is that the officers who are commanded to search be able . . . to identify the specific place for which there is probable cause to believe that a crime is being committed." *United States v. White*, 416 F.3d 634, 637 (7th Cir. 2005). An accurate description of the building is particular enough if there is "no risk of police entering a different [building]." *United States v. Johnson*, 26 F.3d 669, 694 (7th Cir. 1994) (upholding a search warrant although the apartment number was missing from the address, the court found this was not fatal error because the description of the home was accurate enough to avoid the risk of police entering a different home).

Here, the search warrant and accompanying attachments accurately described the Williams Way residence as the place to be searched. The search warrant listed the physical

5

address of the residence as 1721 Williams Way East, Anderson, Indiana. Attachment A (Dkt. 103-1 at 2) to the warrant listed the physical address and further described the Williams Way property as a mostly red brick, two-story residence with tan trim and green shutters. The description of the Williams Way residence was sufficient for the agents executing the warrant to identify the place to be searched and there was no risk of them entering a different building. Additionally, attachment B (Dkt. 103-1 at 7) to the warrant identifies numerous details of the items sought. The warrant imposes a time limitation of January 1, 2005 to the present for the financial records and items subject to search and seizure. The items listed in attachment B are related to matters detailed in the affidavit and paragraphs (a) through (k) describe with some particularity the items to be seized. For example, Agent Guider provides probable cause to seize any and all records, files, documents, computer systems, safes or other storage devices related to Dr. Jones' alleged health care fraud. Accordingly, the Court finds that the warrant was not a general warrant because it met the particularity requirements of the Fourth Amendment.

**C.     Was a search of the entire home overly broad?**

Finally, Dr. Jones argues that even if the Government had probable cause for the search, the initial Williams Way search should have been limited to the home office and outbuildings because the magistrate did not receive information that would lead one to believe records relating to health care fraud would be located anywhere other than the locations noted in the affidavit. Specifically, Dr. Jones asserts the search of his closet and clothes were without probable cause because the affidavit did not mention "bedroom or other personal locations" as places where records might be found.

The Government may search all of the property listed on a valid search warrant as long as the place or container to be searched is large enough to contain the contraband they are looking

for.  *See United States v. Ross,* 456 U.S. 798, 820-21 (1982) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."); *United States v. Evans*, 92 F.3d 540, 543 (7th Cir. 1996) ("If they are looking for an adolescent hippopotamus, they can search the living room or garage but not the microwave oven. If they are searching for cocaine, they can search a container large enough to hold a gram, or perhaps less."); *see also United States v. Percival*, 756 F.2d 600, 612-13 (7th Cir. 1985).

It is well settled law that the Government can search all of the property including closets, containers, and any other closed compartments found on the property as long as the area or item to be searched is large enough to contain the contraband they are looking for.  Electronic storage devices, which are normally small enough to fit in the palm of one's hand, seven years of treatment records, and safes which could possibly be used to store documents or electronic storage devices, could have been located anywhere on the property in addition to the office, so it was reasonable for the agents to search the bedroom closet and entire residence.  Additionally, Agent Guider's information did not limit the search; she merely provided examples in order to establish a basis for probable cause to search the entire residence.

The Court finds affidavits for the subsequent applications gave the magistrate probable cause to issue search warrants of Dr. Jones' Williams Way residence, Lodge, and Montana cabin for evidence of ammunition and firearm possession.  Accordingly, the Court finds the search of each property was not overly broad.

### III. CONCLUSION

For the reasons set forth above, the Court finds that Defendant Bruce Jones' Motion to Suppress (Dkt. 100) is **DENIED.**

**SO ORDERED.**

Date: 07/01/2013

*[signature]*

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Zaki M. Ali
ATTORNEY AT LAW
zali@zakiali.com

John D. Manley
PUMPHREY & MANLEY
john@pumphreymanley.com

Charles David Pumphrey
PUMPHREY MANLEY
david@pumphreymanley.com

Bradley Paul Shepard
OFFICE OF THE UNITED STATES ATTORNEY
brad.shepard@usdoj.gov

Nicholas E. Surmacz
OFFICE OF THE UNITED STATES ATTORNEY
nicholas.surmacz@usdoj.gov